Slip Op. 18-9

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| QUAKER PET GROUP, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>    Defendant. | Before: Gary S. Katzmann, Judge<br><br>Court No. 13-00393 |

## OPINION

[Plaintiff's motion for judgment on the pleadings is granted in part and denied in part.]

Dated: February 12, 2018

Alan Goggins, Barnes, Richardson & Colburn, LLP, of New York, NY, argued for plaintiff. With him on the Plaintiff's Second Supplemental Reply Memorandum was Helena D. Sullivan.

Monica P. Triana, Trial Attorney, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, of Washington, DC, argued for defendant. With her on the brief were Benjamin C. Mizer, Principal Deputy Assistant Attorney General, and Amy M. Rubin, Assistant Director. Of counsel was Beth C. Brotman, Office of the Chief Counsel for Trade Enforcement & Compliance, U.S. Department of Commerce, of Washington, DC.

      Katzmann, Judge: Catching sight of three tiny orphaned kittens wandering in a battlefield tent, President Abraham Lincoln directed Colonel Bowers of General Grant's staff: "Colonel, I hope you will see that these poor little motherless waifs are given plenty of milk and treated kindly."[1] Some eighty years later, President Harry Truman is famously said to have remarked, "[i]f

---

[1] CARL SANDBURG, ABRAHAM LINCOLN: THE WAR YEARS, Vol. IV (1939), p. 146. Sandburg recounts that Lincoln picked up one of the three kittens and asked, "'Where is your mother?' Someone answered, 'The mother is dead.' And as he petted the little one: 'Then she can't grieve as many a poor mother is grieving for a son lost in battle.'" Id. General Porter observed Lincoln

you want a friend in Washington, get a dog."[2]  It would certainly have been beyond the contemplation of the 16th or 33rd Presidents that their animals might be categorized as items or personal effects.  Yet, the determination of that categorization under the domestic tariff scheme is central to the question presented by the case before this court: how should cloth pet carriers be classified for the purposes of determining what tariff rate should apply to their importation?

In this action, Plaintiff Quaker Pet Group, LLC ("Quaker Pet") contests the denials of its administrative protests by U.S. Customs and Border Protection ("Customs") and disputes the tariff classification under the Harmonized Tariff Schedule of the United States (2012) ("HTSUS")[3] which Customs determined for five of its pet carrier products.  Specifically, Quaker Pet contends that pets are not "personal effects" and therefore the pet carriers -- cloth and mesh carrying bags used for transporting pets -- are classifiable under the residual provision for textile articles, HTSUS heading 6307, carrying a duty rate of seven percent. The United States ("the Government") argues that Customs correctly classified the pet carriers under the HTSUS heading 4202, which covers travel, sports, and similar bags, and carries a 17.6 percent duty rate.  Pl.'s Statement of Undisputed

---

fondling the kittens.  "He would wipe their eyes tenderly with his handkerchief, stroke their smooth coats, and listen to them purring their gratitude to him."  Id.

[2] In a variant of the phrase, Nancy Kassebaum, then Senator from Kansas, wrote in a 1987 letter to the New York Times:  "I'll close with some words from Harry Truman:  'If you want a friend in Washington, buy a dog.'" Prospects, N.Y. TIMES, June 7, 1987.  In fact, there is some debate as to the authenticity of the Truman quote. See RALPH KEYES, THE QUOTE VERIFIER 47 (New York: St. Martin's Griffin, New York, 2006).  However, the sentiment's durability is unquestionable. See, e.g., CATHERINE SINCLAIR, MODERN FLIRTATIONS: OR, A MONTH AT HARROWGATE (1841) ("As Lord Byron said, 'nobody need want a friend who can get a dog.'"); LORD BYRON, EPITAPH TO A DOG (1808) ("But the poor Dog, in life the firmest friend / The first to welcome, foremost to defend[.]").

[3] All references to section notes, chapter notes, headings or subheadings contained herein are to 2012 HTSUS.

Facts ¶¶ 12–13, Sept. 18, 2015, ECF No. 21 ("Pl.'s Fact Statement"); Answer to Pl.'s Amended Compl. ¶ 10, Apr. 27, 2015, ECF. No. 13 ("Def.'s Answer"). Before the court is Quaker Pet's Motion for Judgment on the Pleadings as to Count I of its Amended Complaint, and its memorandum in support of the motion ("Pl.'s Br."). The court concludes that the pet carriers are not, as a matter of law, classifiable under heading 4202. However, the relevant record is not sufficiently developed yet for the court to determine whether the products are classifiable under heading 6307. Thus, Quaker Pet's motion for judgment on the pleadings is granted in part and denied in part, and the parties are directed to file a proposed schedule for future proceedings.

## BACKGROUND

### I.     The Merchandise at Issue[4]

The imported merchandise consist of five styles of pet carriers. Amended Compl. ¶ 5, Feb. 12, 2015, ECF No. 7; Def.'s Answer ¶ 5. Pet carrier style numbers 55234, 55534, 97009, and 98791 were imported into Newark, NJ, and style number 94279 was imported into Long Beach, CA from China. Amended Compl. ¶¶ 6–7; Def.'s Answer ¶¶ 6–7. These pet carriers are used to carry cats, dogs, or other pets. Amended Compl. ¶ 8; Def.'s Answer ¶ 8. Subsequent to the commencement of this action, Quaker Pet, the importer of record, was sold to Worldwise, Inc. Letter from Plaintiff's Counsel, ECF No. 61. Worldwise has continued to import the same pet carriers, typically under the Sherpa™ brand trademark. Id.

---

[4] Plaintiff also submitted, pursuant to mandatory disclosures and attached as Exhibits A and B to its motion here, a physical sample and third party marketing materials. However, in the context of this motion for judgment on the pleadings, the court is not considering those materials in reaching its decision. See USCIT Rule 12(c), (d) ("If, on a motion [for judgment on the pleadings] under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

## II. Procedural History

Quaker Pet challenges the classification and liquidation of the subject pet carriers under subheading 4202.92.30[5] of the HTSUS, the provision covering traveling bags and similar containers of textile material. Amended Compl. ¶ 10; Def.'s Answer ¶ 10. As noted, this classification carries a 17.6 percent duty rate. HTSUS 4202.92.30. Quaker Pet -- believing the pet carriers are classifiable under HTSUS subheading 6307.90.98, 'Other made up articles, including dress patterns:…Other:…Other,"[6] which carries a duty rate of seven percent -- contested the liquidations by filing a protest on April 25, 2013. Summons, Dec. 9, 2013, ECF No. 1. Customs denied the protest on June 21, 2013, and this action followed. Id. Initial disclosures were served on January 21, 2015 and supplemented on July 17, 2015. Def.'s Br. at Exhibits 1–2. Quaker Pet moved for judgment on the pleadings as to Count I of its Amended Complaint on September 18, 2015, and the Government filed its response on October 30, 2015. Pl.'s Br.; Def.'s Br. Quaker

---

[5] HTSUS 4202.92.30 covers:
> Trunks, suitcases, vanity cases, attaché cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters and similar containers; traveling bags, insulated food or beverage bags, toiletry bags, knapsacks and backpacks, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder cases, cutlery cases and similar containers, of leather or of composition leather, of sheeting of plastics, of textile materials, of vulcanized fiber or of paperboard, or wholly or mainly covered with such materials or with paper:…
>     With outer surface of sheeting of plastic or of textile materials:...
>         Other…

[6] This argument constitutes Quaker Pet's first Count. See Amended Compl. ¶ 11. In Count II, Quaker Pet argues that "[i]n the alternative, the imported pet carriers are properly classified under subheading 4201.00.30, HTSUS, dutiable at the rate of 2.4% ad valorem, as: 'Saddlery and harness for any animal (including traces, leads, knee pads, muzzles, saddle cloths, saddle bags, dog coats and the like), of any material: Dog leashes, collars, muzzles, harnesses and similar dog equipment.'" Id. ¶13.

Pet filed its reply on November 12, 2015, and the first oral argument was held on February 11, 2016. Pl.'s Reply Br., ECF No. 29; Oral Argument, ECF No. 35. Supplemental briefs were filed in June, July, October, and November 2016. Pl.'s Suppl. Br. 1, June 17, 2016, ECF No. 38; Def.'s Suppl. Resp. Br. 1, June 17, 2016, ECF No. 39; Pl.'s Second Suppl. Br. 2, July 20, 2016, ECF No. 42; Def.'s Second Suppl. Resp. Br. 2, July 20, 2016, ECF No. 43; Pl.'s Suppl. Br. 3, Oct. 21, 2016, ECF No. 46; Def.'s Suppl. Resp. Br. 3, Oct. 21, 2016, ECF No. 47; Pl.'s Suppl. Br. 4, Nov. 4, 2016, ECF No. 49; Def.'s Suppl. Resp. Br. 4, Nov. 4, 2016, ECF No. 50.

On November 29, 2017, the case was reassigned to a new judge. Reassignment Order, ECF No. 52. Quaker Pet filed a motion to withdraw Count II of the amended complaint on December 14, 2017, and the Government filed its response on January 2, 2018. Motion to Withdraw Count 2, ECF. No. 57; Resp. to Motion to Withdraw Count 2, ECF No. 59. Oral argument was held anew on January 17, 2018. Oral Argument, ECF No. 60.

## **APPLICABLE LAW**

### I.   **Jurisdiction and Standard of Review**

The Court has jurisdiction over this action under 28 U.S.C. § 1581(a) (2012), according to which the court has jurisdiction over an action brought under section 515 of the Tariff Act of 1930 as amended, 19 U.S.C. § 1515 (2012) to contest a denial of a protest by Customs.[7]

In a tariff classification case, the Court proceeds de novo. Park B. Smith, Ltd. v. United States, 347 F.3d 922, 924 (Fed. Cir. 2003); see Customs Courts Act of 1980 § 301, 28 U.S.C. § 2640(a)(1)(2012) (directing the Court of International Trade to review classification rulings on "the basis of the record made before the court"). The Court first considers whether "the

---

[7] Further citations to the Tariff Act of 1930, as amended, are to the relevant provision of Title 19 of the U.S. Code, 2012 edition.

government's classification is correct, both independently and in comparison with the importer's alternative." Value Vinyls, Inc. v. United States, 568 F.3d 1374, 1377, 1380 (Fed. Cir. 2009); Jarvis Clark Co. v. United States, 733 F.2d 873, 878 (Fed. Cir. 1984). The plaintiff has the burden of showing the government's determined classification to be incorrect. Park B. Smith, 347 F.3d at 925; Jarvis, 733 F.2d at 876. If the plaintiff meets that burden, the Court has an independent duty to arrive at "the correct result, by whatever procedure is best suited to the case at hand." Value Vinyls, 568 F.3d at 1377 (citing Jarvis, 733 F.2d at 878) (emphasis in original).

While the Court accords respect to Customs' classification rulings relative to their "power to persuade," United States v. Mead Corp., 533 U.S. 218, 235 (2001) (citing Skidmore v. Swift & Co., 323 U.S. 134, 140 (1944)), the Court also has "an independent responsibility to decide the legal issue of the proper meaning and scope of HTSUS terms." Wilton Indus., Inc. v. United States, 741 F.3d 1263, 1265 (Fed. Cir. 2013) (citing Warner-Lambert Co. v. United States, 407 F.3d 1207, 1209 (Fed. Cir. 2005)).

## II.   Judgment on the Pleadings under Rule 12

A party may move for judgment on the pleadings "after the pleadings are closed--but early enough not to delay trial." USCIT Rule 12(c). A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a motion to dismiss under Rule 12(b)(6) for failure to state a claim. See Forest Labs., Inc. v. United States, 29 CIT 1401, 1402–03, 403 F. Supp. 2d 1348, 1349 (2005), aff'd, 476 F.3d 877 (Fed. Cir. 2007). USCIT Rule 12(b)(6) parallels Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. Compare USCIT R. 12(b)(6) with Fed. R. Civ. P. 12(b)(6). In deciding such a motion, the court assumes all factual allegations to be true and draws all reasonable inferences in favor of the non-moving party. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Cedars–Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1584 n.13 (Fed. Cir.

1993); Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991). A plaintiff's factual allegations must be "enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). The court may not rely on matters outside the pleadings unless it also treats the motion as one for summary judgment under USCIT Rule 56. See USCIT Rule 7(a), 12(d), 56.

### III.     Tariff Classification under the General Rules of Interpretation HTSUS

"In a classification case, the court construes the relevant (competing) classification headings, a question of law; determines what the merchandise at issue is, a question of fact; and then determines 'the proper classification under which [the merchandise] falls, the ultimate question in every classification case and one that has always been treated as a question of law.'" Bausch & Lomb, 148 F.3d at 1366; see Wilton Indus., 741 F.3d at 1266. When there is no factual dispute regarding the merchandise, the resolution of the classification issue turns on the first step, determining the proper meaning and scope of the relevant tariff provisions. See Wilton Indus., 741 F.3d at 1266–67; Carl Zeiss, 195 F.3d at 1378; Bausch & Lomb, 148 F.3d at 1365–66.

"The HTSUS scheme is organized by headings, each of which has one or more subheadings; the headings set forth general categories of merchandise, and the subheadings provide a more particularized segregation of the goods within each category." Alcan Food Packaging (Shelbyville) v. United States, 773 F.3d 1364, 1366 (Fed. Cir. 2014) (quoting Wilton Indus., 741 F.3d at 1266). The Court considers chapter and section notes of the HTSUS in resolving classification disputes because they are statutory law, not interpretative rules. See Arko

Foods Intern., Inc. v. United States, 654 F.3d 1361, 1364 (Fed. Cir. 2011) (citations omitted). As such, they are binding on the Court. See Park B. Smith, Ltd., 347 F.3d at 929.

Tariff classification is determined according to the General Rules of Interpretation ("GRIs"), and, if applicable, the Additional U.S. Rules of Interpretation ("ARIs"). The "General Rules of Interpretation govern classification of merchandise under the HTSUS, and are applied in numerical order." Honda of Am. Mfg. v. United States, 607 F.3d 771, 773 (Fed. Cir. 2010) (internal quotations and citations omitted).

Under GRI 1, "classification shall be determined according to the terms of the headings and any relative section or chapter notes."[8] See Faus Grp., Inc. v. United States, 581 F.3d 1369, 1372 (Fed. Cir. 2009) (citing Orlando Food Corp. v. United States, 140 F.3d 1437, 1440 (Fed. Cir. 1998)). Unless there is evidence of "contrary legislative intent, HTSUS terms are to be construed according to their common and commercial meanings." La Crosse Tech., Ltd. v. United States, 723 F.3d 1353, 1358 (Fed. Cir. 2013); Russell Stadelman & Co. v. United States, 242 F.3d 1044, 1048 (Fed. Cir. 2001). In ascertaining a term's common meaning, the court may "consult lexicographic and scientific authorities, dictionaries, and other reliable information" or may rely on its "own understanding of the terms used." Baxter Healthcare Corp. v. United States, 182 F.3d 1333, 1337–38 (Fed. Cir. 1999); see Millennium Lumber Distrib., Ltd. v. United States, 558 F.3d 1326, 1328–29 (Fed. Cir. 2009); Carl Zeiss, 195 F.3d at 1379. "Where a tariff term has various definitions or meanings and has broad and narrow interpretations, the court must determine which

---

[8] GRI 1 provides that:

> The table of contents, alphabetical index, and titles of sections, chapters and sub-chapters are provided for ease of reference only; for legal purposes, classification shall be determined according to the terms of the headings and any relative section or chapter notes and, provided such headings or notes do not otherwise require, according to the following [GRI] provisions.

definition best expresses the congressional intent." Richards Med. Co. v. United States, 910 F.2d 828, 830 (Fed. Cir. 1990).

"The HTSUS is designed so that most classification questions can be answered by GRI 1." Telebrands Corp. v. United States, 36 CIT ___, ___, 865 F. Supp. 2d 1277, 1280 (2012), aff'd, 522 Fed. App'x 915 (Fed. Cir. 2013). "What is clear from the legislative history of the World Customs Organization and case law is that GRI 1 is paramount. . . . The HTSUS is designed so that most classification questions can be answered by GRI 1, so that there would be no need to delve into the less precise inquiries presented by GRI 3." Id.[9] A product is classifiable under GRI 1 if it "is described in whole by a single classification heading or subheading" of the HTSUS; however, "[w]hen goods are in character or function something other than as described by a specific statutory provision -- either more limited or more diversified -- and the difference is significant, then the goods cannot be classified" pursuant to GRI 1. La Crosse Tech., 723 F.3d at 1358 (quoting CamelBak Prods., LLC v. United States, 649 F.3d 1361, 1364 (Fed. Cir. 2011)).

## DISCUSSION

Quaker Pet argues that its pet carriers are properly classifiable under heading 6307 because (1) Chapter 42, Additional U.S. Note 1 excludes pet carriers from Chapter 42; (2) the Federal Circuit's test for whether a product belongs in Chapter 42 excludes pet carriers; and (3) the pet carriers consist of man-made fabric and thus belong in heading 6307. Although the court is unpersuaded that Chapter 42, Additional U.S. Note 1 necessarily excludes Quaker Pet's products from Chapter 42, the court concludes as a matter of law that the products are not properly classifiable under heading 4202 according to Federal Circuit precedent. However, the relevant

---

[9] This case need not proceed beyond GRI 1, as discussed below, and so further discussion of GRI 2 and GRI 3 is unnecessary.

record is not sufficiently developed yet for the court to determine whether the products are classifiable under heading 6307.

### I. Chapter 42, Additional U.S. Note 1 Does Not Automatically Exclude Quaker Pet's Products from Chapter 42.

Applying GRI 1, the court first considers the language of the relevant headings and any applicable chapter or section notes. See Faus Grp., 581 at 1372 (citing Orlando Food Corp., 140 F.3d at 1440). By its terms, heading 4202 covers:

> Trunks, suitcases, vanity cases, attaché cases, briefcases, school satchels, spectacle cases, binocular cases, camera cases, musical instrument cases, gun cases, holsters and similar containers; traveling bags, insulated food or beverage bags, toiletry bags, knapsacks and backpacks, handbags, shopping bags, wallets, purses, map cases, cigarette cases, tobacco pouches, tool bags, sports bags, bottle cases, jewelry boxes, powder cases, cutlery cases and similar containers, of leather or of composition leather, of sheeting of plastics, of textile materials, of vulcanized fiber or of paperboard, or wholly or mainly covered with such materials or with paper:…

HTSUS 4202. HTSUS Chapter 42, Additional U.S. Note 1, further provides that "the expression 'travel, sports and similar bags' means goods, other than those falling in subheadings 4202.11 through 4202.39, of a kind designed for carrying clothing and other personal effects during travel, including backpacks and shopping bags of this heading, but does not include binocular cases, camera cases, musical instrument cases, bottle cases and similar containers." HTSUS Chapter 42, Additional U.S. Note 1. Pets are not clothing, and thus whether pet carriers fall within "travel, sport and similar bags" depends on whether pets are "personal effects."

HTSUS does not define "personal effects." To ascertain the meaning of "personal effects," the court may "consult lexicographic and scientific authorities, dictionaries, and other reliable information" or may rely on its "own understanding of the terms used." Baxter Healthcare Corp., 182 F.3d at 1337–38; see Millennium Lumber, 558 F.3d at 1328–29 (citation omitted); Carl Zeiss,

195 F.3d at 1379 (citation omitted). The American Heritage Dictionary of the English Language, (3rd Ed., 1992 at page 1351) defines personal effects as "[p]rivately owned items, such as keys, an identification card, or a wallet or watch, that are regularly worn or carried on one's person." Other dictionaries provide nearly identical definitions. See Random House Dictionary of the English Language, (2nd Ed. unabridged at page 1445) ("privately owned articles consisting chiefly of clothing, toilet items, etc., for intimate use by an individual"); Webster's Ninth New Collegiate Dictionary, (1986 at page 877) ("privately owned items (as clothing and toilet articles) normally worn or carried on the person"). Dogs and cats are not normally worn or carried on the person, nor are they similar inanimate objects "such as keys, an identification card, or a wallet or watch."

The Government argues that Chapter 42, Additional U.S. Note 1, is irrelevant to the court's classification decision, because "[w]hether or not a product may fit within particular subheadings or heading 4202 is not dispositive of whether it could fall anywhere within the heading" and that "[o]nly after determining that a product is classifiable under the heading should the court look to the subheadings to find the correct classification for the merchandise." Def.'s Br. at 15 (citing Orlando Food Corp., 140 F.3d at 1440).

The court is required to "first construe[] the nature of the heading, and any section or chapter notes in question, to determine whether the product at issue is classifiable under the heading." Orlando Food Corp., 140 F.3d at 1440. Although Chapter 42, Additional U.S. Note 1 mentions some specific subheadings, that fact does not preclude the court from considering the definition this chapter note provides at the GRI 1 stage.[10]

---

[10] Further, the Government presents no authority that supports ignoring a chapter note because it mentions specific subheadings. Indeed, the subheadings mentioned in Chapter 42, Additional U.S. Note 1, simply do not contain the term "travel, sports and similar bags" defined by that Note. See HTSUS 4202.11–.39.

The Government also argues that pets are personal property or "effects" of their owners and thus are "personal effects" for the purposes of HTSUS classification, and cites several cases in support of this contention. Def.'s Br. at 15 (citing <u>Maldonado v. Fontanes</u>, 568 F.3d 263, 270 (1st Cir. 2009) (discussing dogs as property or "effects" for purposes of the Fourth and Fourteenth Amendments); <u>Altman v. City of High Point</u>, 330 F.3d 194, 203–05 (4th Cir. 2003) (holding that dogs are considered personal property or "effects" under the Fourth Amendment); <u>Schrage v. Hatzlacha Cab Corp.</u>, 13 A.D.3d 150, *1 (1st Dep't N.Y.S. 2004) (discussing dogs as personal property for the purposes of New York state law)). The Government further cites Social Security Administration ("SSA") documents explicitly including pets in the definition of personal effects for the purposes of determining Supplemental Security Income benefits. Def.'s Br. at 15 (citing SSA: Program Operations Manual System, SI 01130.430, <u>available at</u> https://secure.ssa.gov/poms.nsf/lnx/0501130430).

The court finds this argument unpersuasive. First, the court notes that none of these sources assess the definition of personal effects under the HTSUS or relate to the HTSUS at all. Further, the cases do not address whether dogs are personal effects, but instead whether they are personal property or effects. "Personal property" and "effects"[11] cover a much broader range of property than "personal effects," which is limited to property normally worn or carried on the person, as discussed above. Thus, the cases do not provide any guidance on the common or commercial meaning of the term "personal effects" in the context of HTSUS heading 4202. Additionally, although the SSA documents do define "personal effects," the definitions cited therein are

---

[11] The definitions of "personal property" and "effects" are property "consisting in general of things temporary or movable including intangible property" and "movable property," respectively. <u>Webster's Third New International Dictionary</u> at 724, 1687.

regulatory definitions in the context of personal property, and are not relevant to the common or commercial meaning of the term "personal effects" for purposes of HTSUS heading 4202.

Even though a pet is not a personal effect -- and therefore, the pet carriers are not similar to a travel or sport bag -- that does not automatically exclude the pet carriers from heading 4202, as the pet carriers could be similar to another type of bag explicitly listed, such as a suitcase.

### II.     The Avenues In Leather Test Does Exclude Quaker Pet's Products from Chapter 42.

The court next turns to the Federal Circuit's Avenues In Leather test for determining whether something is classifiable under heading 4202:[12] "the common characteristic or unifying purpose of the goods in heading 4202 consist[s] of organizing, storing, protecting, and carrying various items." Avenues In Leather, Inc. v. United States, 423 F.3d 1326, 1332 (Fed. Cir. 2005) (emphasis added) (citations omitted).

As a threshold question, the court considers whether pets are items. An "item" is defined as "an individual thing (as an article of household goods, an article of apparel, an object in an art collection, a book in a library) singled out from an aggregate of individual things (as those being enumerated in a bill or inventory or similar list)." Webster's Third New International Dictionary at 1203. A "thing" is defined as "an inanimate object as distinguished from a living being." Id. at

---

[12] Although not binding law, courts also look to the Explanatory Notes ("ENs") to the Harmonized Commodity Description and Coding System, maintained by the World Customs Organization, as persuasive authority on how to interpret and apply HTSUS provisions. See Home Depot, 491 F.3d at 1336 ("Although the Explanatory Notes 'do not constitute controlling legislative history,' they are nonetheless intended to offer guidance in clarifying the scope of HTSUS subheadings." (citing Mita Copystar Am. v. United States, 21 F.3d 1079, 1082 (Fed. Cir. 1994))); Deckers Outdoor Corp. v. United States, 714 F.3d 1363, 1367 n.1 (Fed. Cir. 2013); see generally Alcan Food Packaging (Shelbyville) v. United States, 37 CIT ___, 929 F. Supp. 2d 1338 (2013) (relying extensively on the guidance provided by the ENs to resolve the case under GRI 1), aff'd, 771 F.3d 1364 (Fed. Cir. 2014). The ENs to HTSUS Chapter 42, however, do not provide guidance relevant to the issue at hand, and so do not factor into the court's analysis here.

2376.  Pets are living beings, and thus not things or items.  Therefore, the pet carriers in question do not fulfill the criteria propounded in the <u>Avenues In Leather</u> case for classification under heading 4202.

At oral argument, the Government contended that the common characteristic or unifying purpose of the goods in heading 4202 was only to organize, store, protect, and carry; that "items" was merely a placeholder word for whatever heading 4202 containers organized, stored, protected, and carried; and that to consider "items" part of the common characteristic of the goods in heading 4202 would impose a distinction between animate and inanimate objects that the Federal Circuit did not intend and that had no basis in the tariff heading.  Oral Argument.  The court finds this reasoning unpersuasive.  The Government offers no compelling reason to conclude that the Federal Circuit's choice of the word "items" was any less deliberate than its choice of "organizing, storing, protecting, and carrying" when articulating the common characteristic or unifying purpose of the goods in heading 4202.  Further, the distinction between animate and inanimate objects is supported by the tariff heading itself: all exemplar goods listed in heading 4202 are designed to contain inanimate objects and not living beings.  HTSUS 4202; <u>see also</u> <u>Firstrax</u>, 2011 WL 5024271, at *9 ("On their face, exemplars listed in heading 4202 store and/or contain inanimate objects of personal property, not living, breathing animals.").

The Government also contends that, although the pet carriers do indeed carry pets, other objects could be placed in the side pockets of Quaker Pet's products, and thus it is still proper to classify the pet carriers under heading 4202.  Def.'s Br. at 9–11.  However,

> It is well settled that when a list of items is followed by a general word or phrase, the rule of <u>ejusdem generis</u>[13] is used to determine

---

[13] <u>Ejusdem generis</u> is a "canon of construction holding that when a general word or phrase follows a list of specifics, the general word or phrase will be interpreted to include only items of the same class as those listed."  BLACK'S LAW DICTIONARY (10th ed. 2014).

> the scope of the general word or phrase. In classification cases, ejusdem generis requires that, for any imported merchandise to fall within the scope of the general term or phrase, the merchandise must possess the same essential characteristics or purposes that unite the listed exemplars preceding the general term or phrase. However, a classification under the ejusdem generis principle is inappropriate when an imported article has a specific and primary purpose that is inconsistent with that of the listed exemplars in a particular heading.

Avenues In Leather, 423 F.3d at 1332 (internal citations omitted). Here, the pet carriers' primary purpose is to carry living beings -- pets. Amended Compl. ¶ 8; Def.'s Answer ¶ 8. As discussed above, this primary purpose is inconsistent with the purpose of the exemplars in heading 4202, which is to organize, store, protect, and carry various inanimate objects. Avenues In Leather, 423 F.3d at 1332; see also HTSUS 4202 (listing containers only designed for use holding inanimate objects). Thus, the possibility of placing some objects in the side pockets does not entail that the pet carriers are properly classifiable under heading 4202.

### III. The Record Is Not Yet Sufficiently Developed for the Court to Determine the Proper Heading for the Products.

Continuing the GRI 1 analysis, the court turns to whether the pet carriers are classifiable under heading 6307, which covers "Other made up articles, including dress patterns" of textile. HTSUS 6307. Specifically, heading 6307 includes "made up textile articles of any textile fabric (woven or knitted fabric, felt, nonwovens, etc.) which are not more specifically described in other Chapters of Section XI or elsewhere in the Nomenclature." Chapter 63, Explanatory Notes (emphasis in original). "Made up" is defined by the HTSUS as "[a]ssembled by sewing, gumming or otherwise (other than piece goods consisting of two or more lengths of identical material joined end to end and piece goods composed of two or more textiles assembled in layers, whether or not padded)." HTSUS Section XI, Note 7(e). Under the HTSUS, textiles include fabrics made from man-made fibers and filaments, including polyethylene. See HTSUS Chapter 54.

The Government contends that Quaker Pet has not established that the pet carriers can be classified under heading 6307 because "there is no evidence in the record as to the 'predominant material' for the five styles of pet carriers at issue, nor any legal analysis as to the relevance of the 'predominant material.'" Def.'s Br. at 16. The court notes that Quaker Pet is not required to establish the correct classification heading: the plaintiff only has the burden of showing the government's determined classification to be incorrect. Park B. Smith, 347 F.3d at 925; Jarvis, 733 F.2d at 876. If the plaintiff meets that burden, the Court has an independent duty to arrive at "the correct result, by whatever procedure is best suited to the case at hand." Value Vinyls, 568 F.3d at 1377 (citing Jarvis, 733 F.2d at 878) (emphasis in original). However, the undisputed facts contained in the pleadings do not provide sufficient information -- for example, the materials comprising each style of pet carrier or any procedure through which the products were assembled or otherwise made up -- for the court to determine whether the pet carriers are properly classifiable under HTSUS heading 6307 or another heading.[14]

---

[14] Quaker Pet contends that the materials it provided as part of mandatory disclosures -- which include third party marketing materials for each of the pet carrier styles and a sample of one of the styles of pet carrier -- establish that the pet carriers belong in heading 6307. Pl.'s Br. at Exhibit A, Exhibit B. However, as previously noted supra n.4, the court does not consider the mandatory disclosures as part of ruling on a motion for judgment on the pleadings. Quaker Pet further suggests that, under USCIT Rule 12, the court could convert this motion into a motion for summary judgment. USCIT Rule 12 ("If, on a motion [for judgment on the pleadings] under Rule . . . 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."). The court declines to use its discretion to convert this motion on the pleadings into a motion for summary judgment, as the Government has not been given sufficient opportunity to present material pertinent to a summary judgment motion. See USCIT Rule 12(d) ("All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). All briefing and oral argument up to this stage have addressed only Quaker Pet's motion for judgment on the pleadings, and thus the Government has not had an adequate opportunity to develop the record and present arguments related to a motion for summary judgment.

### IV. The Court Grants the Pending Motion to Withdraw Count II

In addition to the motion for the judgment on the pleadings, Quaker Pet also filed a Motion to Withdraw Count II of the Amended Complaint. ECF No. 57. In Count II, see supra n.6, Quaker Pet claimed, in the alternative, that if the court did not find that the pet carriers were classifiable under HTSUS heading 6307, they would be classifiable under heading 4201.00.30 ("Harness and saddlery for any animal (including traces, leads, knee pads, muzzles, saddle cloths, saddle bags, dog coats, and the like) of any material: Dog leases, collars, muzzles, harnesses and similar dog equipment."). Amended Compl. ¶¶ 12–13. The Government does not consent to this motion "because this case is designated as a test case, and we believe that all classification claims should be address in this action in order to promote efficient adjudication of the suspended cases." Resp. to Motion to Withdraw Count II of the Amended Compl., 1–2, ECF No. 59. However, the court has an independent duty to evaluate all potential HTSUS classifications, and so withdrawing Count II will not prevent the court from considering heading 4201 and any other potentially relevant headings when ruling on Count I. Value Vinyls, 568 F.3d at 1377 (citing Jarvis, 733 F.2d at 878). The court thus grants Quaker Pet's Motion to Withdraw Count II.

### CONCLUSION

Given that the pet carriers' primary purpose is to carry pets and not items, they are excluded as a matter of law from heading 4202. However, the undisputed facts contained in the pleadings do not provide enough information for the court to determine the proper classification for the products.

Accordingly, it is hereby

**ORDERED** that Quaker Pet's motion for judgment on the pleadings be granted in part and denied in part; and it is further

**ORDERED** that within two weeks of the date of this Opinion, the parties shall file a proposed schedule for further proceedings consistent with this opinion;

**ORDERED** that Quaker Pet's motion to withdraw count II of the amended complaint be granted; and it is further

**ORDERED** that count II of the amended complaint shall be withdrawn.

/s/   *Gary S. Katzmann*
Gary S. Katzmann, Judge

Dated: February 12, 2018
         New York, New York